342 So.2d 112 (1977)
COQUINA CLUB, INC., et al., Appellants,
v.
Ray T. MANTZ et Ux., Appellees.
No. 75-1629.
District Court of Appeal of Florida, Second District.
February 4, 1977.
John L. Laskey and E. Glenn Tucker of Treadwell, Emerson & Elkins, Naples, for appellants.
Guion T. DeLoach, Naples, for appellees.
HOBSON, Acting Chief Judge.
Appellants/defendants seek relief from a final judgment entered for appellees/plaintiffs arising out of the disapproval by defendants, for membership in a condominium association, of a prospective purchaser of the apartment of the plaintiffs.
On or about July 24, 1974, one Garvin made an offer to purchase plaintiffs' condominium apartment. A real estate broker, acting for Garvin and the plaintiffs, forwarded to defendants an application of the prospective purchaser for membership in the Coquina Club condominium and attached an unexecuted copy of the sales agreement and deposit receipt, which was signed by Garvin and his wife. On the face of the application for membership in the defendant club was a statement reciting that Garvin had two children, ages six and ten. On August 1, 1974, the realtor was notified that Garvin's application, pursuant to Article IV of the club rules and regulations, was rejected. Article IV, as explained by former officers of the condominium association, was nothing more than a procedure for application of certain portions of the Declaration of Condominium restricting ownership of apartments in the condominium to persons without children under twelve years of age.[1]
Subsequently, on August 8, 1974, a demand was made upon defendants, pursuant to subsection 11.3 of the declaration of condominium,[2] *113 to provide a purchaser or to purchase the condominium of the plaintiffs within thirty days from the date of the demand. Defendants took no action with respect to this demand. Plaintiffs then initiated this action asserting discrimination in that other current apartment owners had children under twelve living in the complex. Plaintiffs sought on the one hand damages in the amount of $51,000 for lost opportunity arising out of the defendants' rejection of the Garvin application. In the alternative plaintiffs requested specific enforcement of the provisions of the Declaration of Condominium (Section 11) requiring defendants to furnish a purchaser or purchase said apartment themselves.
Defendants denied any discrimination, contending that those apartment owners who had children under twelve were authorized pursuant to agreements executed by the developers of the complex prior to the adoption of the Declaration of Condominium. Defendants also affirmatively pleaded that plaintiffs were estopped to pursue their cause of action since prior to the attempted sale they had given their written approval to the very rules and regulations which they subsequently attacked. Finally, defendants asserted that plaintiffs failed to exhaust administrative remedies and failed to comply with the very provisions of the Declaration of Condominium which they sought to invoke. Following a trial the lower court granted plaintiffs' prayer for specific performance of the condominium documents ordering defendants to provide a purchaser or to purchase the apartment themselves. The final judgment also provided a mechanism for awarding monetary damages, including punitive damages, in the event defendants failed to comply with the order for specific performance.
The issue for our consideration is whether the trial court misinterpreted the purpose of the provisions under section 11 of the Declaration of Condominium in requiring the defendants to either provide a purchaser or purchase the plaintiffs' apartment themselves. A subsidiary question involves the validity of reasonable use and occupancy restrictions. Although the latter question is not dispositive of the primary issue herein, we would note that the condominium act in effect at the time of this transaction[3] specifically allowed reasonable restrictions concerning use, occupancy, and transfer of units.[4] Age restrictions in at *114 least one other jurisdiction have even withstood constitutional attacks. Riley v. Stoves, 22 Ariz. App. 223, 526 P.2d 747 (1974) (age restriction to 21 years or older upheld).
Plaintiffs assert they are entitled to invoke the provisions of section 11 of the Declaration of Condominium requiring defendants to furnish a purchaser or approve the sale absent a purchaser which essentially requires defendants to purchase the apartment. We are convinced that such a result was not intended by these documents. In the first place, invocation of the procedures requires minimal satisfaction of several prerequisites. Thus, before a unit owner may make a demand for other purchasers to be provided (assuming disapproval or potential disapproval) the potential buyer or applicant must facially qualify for membership. Only upon meeting the basic requirements itemized on the application will the prospective purchaser be then subjected to closer financial scrutiny, thereby allowing the unit seller to make demand upon the association for a substitute purchaser.
This bifurcated application procedure, although not explicitly delineated in the condominium documents, is required since to hold otherwise would enable any present or future apartment owner to procure any potential buyer, have that person make application for membership in the association, and upon denial require the condominium association to provide a purchaser or purchase the condominium themselves. This type of arrangement, fraught with collusive possibilities, was certainly not intended or expected when the provisions of section 11 were drafted. Instead, defendants correctly assert the intent of section 11 is to allow the board of directors to screen qualified prospective residents in the condominium for financial responsibility. The prefatory language to section 11 also suggests that this was the intention of that section. It states, in part,
"11. Maintenance of community interests. In order to maintain a community of congenial residents who are financially responsible and thus protect the value of the apartments ..." (emphasis supplied)
Since defendants initially determined that Garvin failed to qualify for residency in the condominium, further inquiry to his financial responsibility was neither necessary nor required. Section 11 was never invoked.
Other factors support the result we reach here. We note that prior to the events giving rise to the instant case plaintiffs adopted in writing the rules and regulations which they now challenge. In addition, plaintiffs took their condominium subject to the covenants contained in the Declaration of Condominium, including section 10.9 allowing for the adoption of reasonable rules and regulations concerning the use of condominium property. Finally, even assuming the applicability of section 11 to the case sub judice, we doubt the plaintiffs complied with the procedures outlined in that section, namely no demand was made at the time of application pursuant to subsection 11.2(a),[5] nor was the application accompanied by an executed copy of the proposed contract to sell.
Therefore, since we hold the plaintiffs' purchaser failed to meet the basic requirements necessary to trigger the mechanism available in the financial responsibility section of the declaration of condominium, the trial court's order directing specific performance *115 of that section or in the alternative damages is reversed.
REVERSED.
McNULTY, J., and FOGLE, HARRY W., Associate Judge, concur.
NOTES
[1] Section 10 of the declaration of condominium deals broadly with use restrictions. Subsection 10.6 states,

"Minors above the age of twelve years are permitted to occupy the premises. Such minors shall be closely supervised and care taken to insure that they do not become a nuisance to other residents. Minors under the age of twelve years are entitled to visit and temporarily occupy the premises for nonconsecutive periods of fifteen days during the summer and winter seasons. For the purposes of this provision, the summer will be defined as that period from May 1 through August 31 of each year, and the winter shall be defined as that period from September 1 through April 30 of each year."
[2] Section 11 of the declaration defines comprehensively the procedures for association approval of all transfers of interests in the condominium complex. Subsection 11.2(a)(1) requires an apartment owner who wishes to sell his apartment to provide notice of such intent along with the address and such other information regarding the prospective purchaser as may be required. The subsection also provides,

"Such notice at the apartment owner's option may include a demand by the apartment owner that the association furnish a purchaser of the apartment if the proposed purchaser is not approved; and if such demand is made the notice shall be accompanied by an executed copy of the proposed contract to sell."
The application and sales agreement forwarded by the realtor on behalf of the plaintiffs and Garvin on July 24 contained no demand that the association provide a purchaser nor did the materials have attached an executed copy of the proposed sales contract. Plaintiffs, nevertheless, assert that subsection 11.3 applies. That subsection, which deals with disapproval by the association, reads in part,
"a. Sale. If the proposed transaction is a sale and if notice of sale given by the apartment owner shall so demand, then within 30 days after receipt of such notice and information the association shall deliver or mail by certified mail to the apartment owner an agreement to purchase the apartment concerned by a purchaser approved by the association who will purchase and to who the apartment owner must sell the apartment upon the following terms.
"(5) If the association shall fail to provide a purchaser upon demand of the apartment owner in the manner provided, or if a purchaser furnished by the association shall default in his agreement to purchase, then notwithstanding the disapproval the proposed transaction shall be deemed to have been approved as elsewhere provided, which shall be recorded in the public records of Collier County, Florida, at the expense of the purchaser."
[3] § 711.01 et seq., Fla. Stat. (1963).
[4] § 711.08(2), Fla. Stat. (1963). The allowance of reasonable restrictions on use and occupancy is carried over in the new condominium act, § 718.104(5), Fla. Stat. (Supp. 1976). In fact, cases prior to the adoption of the new condominium act recognized restraints on use in the condominium environment. See, e.g., Hidden Harbour Estates, Inc. v. Norman, 309 So.2d 180 (Fla. 4th DCA 1975) (alcoholic beverages prohibited in clubhouse and adjacent areas). While age restrictions in condominium documents have not been specifically tested in our courts, there is reason to believe that their validity will be measured from the standpoint of reasonableness. Hidden Harbour Estates, Inc., supra. For more extensive treatment on age restrictions see Annot., 68 A.L.R.3d 1239 (1976).
[5] See note 2, supra.