In the Matter of TIMOTHY F. MYERS et al., Appellants, v KEY BANK, N. A., et al., Respondents.

Third Department, December 5, 1985

**APPEARANCES OF COUNSEL**

*Steven D. Farer* for appellants.

*Gold & Symansky (Richard D. Symansky* of counsel), for respondents.

**OPINION OF THE COURT**

LEVINE, J.

On March 13, 1981, Dolores Clark (hereinafter Clark), as administratrix of the estate of Robert Clark (hereinafter decedent), recorded a deed executed by decedent in November of 1978 purporting to convey the Sleepy Hollow Apartment complex in Greene County (hereinafter the property) to herself. In February of 1982, Clark joined in an application to respondent Key Bank, N. A. for a loan and represented in a financial statement that she owned the property. When Clark defaulted on the loan, Key Bank obtained and perfected a

judgment, securing a lien on the property, and began to enforce it by initiating procedures for a sale of the premises.

Subsequent to these events, in a proceeding in which Key Bank was not a party, the Surrogate's Court of Greene County granted an order setting aside the conveyance from decedent to Clark. Thereafter, Clark, as administratrix of the estate, then signed a deed purporting to convey the property from the estate to petitioner Timothy F. Myers. Petitioner Dime Savings Bank of New York received from Myers a purchase-money mortgage which constituted the financing for this transaction. Because of Key Bank's competing claim to the property, petitioners commenced the instant proceeding pursuant to CPLR 5239, requesting a determination of the priority of the competing claims. Petitioners asserted that decedent never delivered the 1978 deed to Clark and, therefore, title to the property remained in decedent and passed to Myers from the estate. Thus, they argued, Clark never owned the property and Key Bank's lien, based upon that purported ownership, is not prior to the interests of Myers and Dime Savings in the property. Special Term ruled, without a hearing, that Key Bank's interest is superior to any rights of petitioners in the property and this appeal ensued.

We affirm. For the reasons stated herein, petitioners are estopped from asserting, as against Key Bank, that decedent never delivered the 1978 deed to Clark.

Clark stated in affidavits that she did not know of the 1978 deed until decedent's death and that she recorded it in 1981 in her capacity as administratrix of the estate so the estate could avoid having the property subject to execution, pursuant to prior, unrelated judgments rendered against decedent. Key Bank prejudicially changed its position in reliance upon that conduct by loaning Clark money based upon her asserted ownership of the property, which assertion, according to her affidavits, amounted to a false representation of material fact concerning her loan application. No evidence was submitted to show that Key Bank acted without good faith. Although a notice of pendency in connection with the property was indexed against Clark, individually and as administratrix of the estate, in the Greene County Clerk's office, it was filed nine weeks after Clark represented to Key Bank that she owned the property, and it concerned a proceeding in Surrogate's Court in which the validity of the delivery of the 1978 deed to Clark was not at issue. Therefore, it cannot be said, upon the basis of that notice of pendency, that Key Bank had knowl-

edge that the estate rather than Clark owned the property. Under the circumstances, Key Bank may properly assert an estoppel against Clark and the estate *(Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 81-82). Furthermore, when Clark as administratrix conveyed the property from the estate to Myers, a title examination would have revealed the prior conveyance from decedent to Clark and Key Bank's judgment docketed against her. Petitioners are charged with at least constructive knowledge of the existence of the recorded interests *(487 Elmwood v Hassett,* 83 AD2d 409, 411-412, *mot to dismiss appeal granted* 55 NY2d 1037). Thus, petitioners, as grantees in privity with an estopped grantor, are also estopped since they were not bona fide purchasers without knowledge of Key Bank's claim *(Lyon v Morgan,* 143 NY 505, 509-510).

The only other point raised by petitioners meriting discussion is the claim that Special Term erred in summarily deciding this case without a hearing. We disagree. There is no dispute regarding any of the dispositive facts herein. A hearing was therefore unnecessary *(Andre v Pomeroy,* 35 NY2d 361, 364-365).

KANE, J. (dissenting). We respectfully dissent.

The rather confusing, although undisputed, factual background of this case is as follows.

On September 2, 1975, Robert Clark (hereinafter decedent) acquired title to real property located in the Town of Catskill, Greene County, upon which was located the Sleepy Hollow Apartment complex (hereinafter the property). On November 22, 1978, William J. and Shirley E. Malik entered two judgments totaling in excess of $40,000 against decedent.[1] However, a few days earlier, on November 7, 1978, decedent had executed, *but did not deliver,* a deed to the property to Dolores Clark (hereinafter Clark), his wife. Decedent continued to exercise exclusive control over the property until his death on March 3, 1981. Shortly thereafter, Clark's brother happened to find the deed conveying the property to her among decedent's personal possessions.

Clark caused this deed to be recorded on March 13, 1981, under the belief that doing so would put the property beyond the reach of the creditors of decedent's estate. In February

---

1. Between 1976 and November 1978, numerous other judgments and tax warrants were entered against decedent.

1982, Clark, together with other business associates, guaranteed a loan from respondent Key Bank, N. A. to 340 Main Street Corporation. In conjunction with guarantying the loan, Clark submitted a financial statement wherein, among a listing of numerous assets, she listed the subject property.

In April 1982, the Maliks petitioned Surrogate's Court to have the conveyance from decedent to Clark set aside and declared null and void. The Maliks then filed a notice of pendency, indexed against Clark, both individually and as administratrix of decedent's estate, in the Greene County Clerk's office on April 23, 1982. Clark did not oppose the application to set aside the conveyance and, by order entered September 28, 1984, Surrogate's Court ordered that: "the conveyance of real property from Robert H. Clark a/k/a Bob Clark, to Dolores Clark by Deed dated November 7, 1978, and recorded March 13, 1981, in Liber 508 of Deeds at Page 152, in the Greene County Clerk's Office, shall be and hereby is set aside."

In the meantime, based upon Clark's guarantee of the loan to 340 Main Street Corporation, Key Bank obtained a judgment (entered Apr. 6, 1984 in Schenectady County) in the amount of $74,268.53 against her. A transcript of this judgment was subsequently filed on May 7, 1984 in the Greene County Clerk's office. As judgment creditor of Clark, Key Bank, on September 11, 1984, served "a property execution against the real property [the property] owned by Dolores Clark", and notice of a Sheriff's sale was published shortly thereafter. However, in a closing held on September 28, 1984, Clark, in her capacity as administratrix of decedent's estate, conveyed the property to petitioner Timothy F. Myers.[2] Petitioner Dime Savings Bank provided financing for this transaction secured by what purported to be a first mortgage on the property from Myers.

On October 24, 1984, petitioners commenced this proceeding for a determination as to their title and to prevent the sale of the property by Key Bank. In due course, Special Term ruled that Key Bank's rights in the real property were prior to any rights petitioners might have in the property. Special Term thus ordered the Sheriff's sale of the property to proceed. This appeal by petitioners ensued.

No one disputes the factual assertion that the deed from decedent was never delivered. This being the case, the deed

---

2. The deed was dated September 20, 1984 and recorded October 3, 1984.

was void (43 NY Jur 2d, Deeds, §§ 55-56, 69, at 244-246, 258; 6A Powell, Real Property § 891, at 81-95) and, absent the majority's finding of equitable estoppel, title passed directly from decedent's estate to Myers. The application of the doctrine of equitable estoppel by the majority, however, creates title in Clark, thereby enabling Key Bank to have the property sold at a Sheriff's sale in order to satisfy its judgment (see, CPLR 5201; Siegel NY Prac § 486, at 653). In our opinion, such use of equitable estoppel violates the settled rule that equitable estoppel "does not operate to create rights otherwise nonexistent" (21 NY Jur, Estoppel, § 17, at 23; see also, 21 NY Jur, Estoppel, §§ 18, 22, at 25, 28; cf. Matter of O'Neill v Regan, 114 AD2d 613, 614).

Key Bank is merely an unsecured creditor of Clark which may have relied upon a false listing of assets in the financial statement submitted to it by Clark. This erroneous listing cannot serve to create an interest in the property which Clark never had. Indeed, the implication of the majority's holding is far-reaching. One could create an interest in property for himself by falsely asserting his ownership and having someone rely on the assertion. This, in our opinion, is simply not the role of equitable estoppel.

Moreover, even if equitable estoppel could be turned to, we would not find it binding upon Myers. Before closing on the property, he had an affidavit from Clark representing that the deed to her from decedent had never been delivered. Myers also relied on an order of Surrogate's Court specifically setting aside the transaction to Clark.[3] Based upon this information, petitioners could reasonably conclude that title to the property was never transferred to Clark. Finally, Key Bank has failed to submit evidence from any one with knowledge of the event that it relied on the representation of ownership contained in the subject financial statement. Key Bank's attorney's bald assertion is not sufficient to demonstrate reliance on Key Bank's part.

Accordingly, we would reverse and grant the petition.[4]

---

3. No motion to reargue, to intervene or to vacate this order has ever been made. Further, no appeal has been taken from this order.

4. Myers' title would be subject to the numerous judgment creditors of decedent who had perfected their judgments.

CASEY and WEISS, JJ., concur with LEVINE, J.; MAHONEY, P. J., and KANE, J., dissent and vote to reverse in an opinion by KANE, J.

Order affirmed, with costs.